# 25-0722-cv

## United States Court of Appeals

*for the*

## Second Circuit

CHANEL, INC.,

*Plaintiff-Appellee,*

– v. –

WHAT COMES AROUND GOES AROUND LLC, DBA What Goes Around Comes Around, MHW PROPERTIES, INC., PINES VINTAGE, INC., VINTAGE DESIGNS LTD., WGACA, LLC, WGACA WEB, LLC, WCAGA LA, LLC,

*Defendants-Appellants,*

SETH WEISSER, GERARD MAIONE, WCAGA WEB, LLC,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

JILL M. PIETRINI
SHEPPARD MULLIN
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
(310) 228-3700

THEODORE C. MAX
TYLER E. BAKER
HYO JIN PAIK
SHEPPARD MULLIN
30 Rockefeller Plaza
New York, New York 10112
(212) 653-8700

MATTHEW G. HALGREN
SHEPPARD MULLIN
501 West Broadway, 18th Floor
San Diego, California 92101
(619) 338-6500

*Attorneys for Plaintiff-Appellee*

COUNSEL PRESS (800) 4-APPEAL • (389464)

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee Chanel, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 9 West 57th Street, New York, New York 10019.

Plaintiff-Appellee has a parent, Chanel Ltd., which is an entity organized under the laws of the United Kingdom, and states that no publicly held corporation owns more than 10% of its outstanding stock.

# TABLE OF CONTENTS

Page

COUNTERSTATEMENT OF THE ISSUES PRESENTED ..................... 1

STATEMENT OF THE CASE ............................................................. 2

I. Chanel Brought This Case to Stop WGACA's Infringement of the Famous Chanel Trademarks, False Association, and the False Advertising and Sale of Infringing and Counterfeit CHANEL-Branded Goods ............................................................. 2

A. The Jury and the District Court Concluded that Chanel Presented Compelling Evidence of WGACA's Counterfeiting and Willfulness ............................................. 4

B. Evidence from the Phase II Bench Trial Is Not Relevant ............................................................................ 14

SUMMARY OF ARGUMENT ........................................................... 14

ARGUMENT ..................................................................................... 18

I. THE DISTRICT COURT'S COUNTERFEIT INSTRUCTION WAS NOT ERRONEOUS, WGACA FORFEITED ITS OBJECTION TO THE INSTRUCTION, AND ANY ALLEGED ERROR WAS HARMLESS ........................................ 18

A. The Court's Counterfeiting Instruction Mirrored the Lanham Act ........................................................................ 21

B. WGACA's Proposed Alternative Instruction Erroneously Shifted the Burden of the Overrun Affirmative Defense to Chanel ........................................... 23

C. WGACA Forfeited Any Objection Based Upon the Section 1116(d) Exclusion .................................................. 27

D. Any Purported Error Was Harmless Because WGACA Presented No Evidence to Support Its Speculation as to the Accused CHANEL-Branded Handbags .......................... 29

E. WGACA's Cited Authority Is Distinguishable and Not Controlling .......................................................................... 31

II. THE COURT PROPERLY EXCLUDED EVIDENCE OF CHANEL'S MOTIVATION FOR BRINGING SUIT...................... 35

A. WGACA Improperly Conflates Evidence Regarding Chanel's Motivation for Bringing Suit, Which the Court Properly Excluded, With Evidence of Witness Bias ............ 36

B. The Supposedly "Misleading" Testimony Relied on By WGACA Was Not Material to the Jury's Judgment, Nor Was It Misleading ........ 41

C. The Exclusion of Motivation Evidence Did Not Prejudice WGACA ........ 48

III. THE JURY'S STATUTORY DAMAGES AWARD DOES NOT VIOLATE DUE PROCESS BECAUSE THE STATUTORY DAMAGES AWARDED ARE WITHIN THE RANGE PRESCRIBED BY CONGRESS ........ 51

A. The Seventh Amendment Protects the Jury's Determination Regarding Maximum Statutory Damages ........ 54

B. Neither *Williams* Nor *Gore* Support Reversal of the Jury's Statutory Damages Award ........ 55

1. The jury's award does not violate the "Williams Standard." ........ 55

2. The jury's award does not violate the "Gore Standard." ........ 59

C. The Jury's Thoughtfully Deliberate Award of Maximum Statutory Damages Was Within the Permitted Statutory Damages Range Set by Congress ....... 62

IV. THE DISTRICT COURT DID NOT ERR IN AWARDING COSTS TO CHANEL, BUT THIS COURT SHOULD REMAND THE ISSUE TO THE DISTRICT COURT FOR CONSIDERATION ON A FUTURE BILL OF COSTS TO BE FILED BY CHANEL ........ 66

CONCLUSION ........ 68

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agence Fr. Presse v. Morel*
2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) ........ 65

*AL Infinity, LLC v. Crown Cell, Inc.*
2023 WL 5097979 (S.D.N.Y. Aug. 9, 2023) ........ 25, 31

*AL Infinity LLC v. Spalter*
No. 24-1412, 2025 WL 1937263 (2d Cir. July 15, 2025) ... 19, 21, 26, 31

*Arista Records LLC v. Usenet.com, Inc.*
No. 07 CIV 8822 HB THK, 2010 WL 3629688 (S.D.N.Y. Feb. 2, 2010) ........ 62, 64

*Atari Interactive, Inc. v. Redbubble, Inc.*
No. 4:18-cv-03451 (N.D. Cal. Nov. 4, 2021) ........ 34

*Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*
369 U.S. 355 (1962) ........ 54

*Balance Point Divorce Funding, LLC v. Scrantom*
305 F.R.D. 67 (S.D.N.Y. 2015) ........ 67

*Benson v. Fam. Dollar Operations, Inc.*
755 F. App'x 52 (2d Cir. 2018) ........ 28

*BMW of North America, Inc. v. Gore*
517 U.S. 559 (1996) ........ 52, 55, 59, 60

*Brainstorm Interactive, Inc. v. School Specialty, Inc.*
2014 WL 6893881 (W.D. Wis. Dec. 5, 2014) ........ 32

*Burberry Ltd. v. Euro Moda, Inc.*
No. 08 CIV. 5781, 2009 WL 4432678 (S.D.N.Y. Dec. 4, 2009) ........ 66

*Cadet v. All. Nursing Staffing of New York, Inc.*
632 F. Supp. 3d 202 (S.D.N.Y. 2022) ........ 34

*Capitol Records, Inc. v. Thomas-Rasset*
692 F.3d 899 (8th Cir. 2012) .................................................. 58, 60, 61

*Carroll v. Trump*
124 F.4th 140 (2d Cir. 2024) .................................................. 48, 49

*Cary Oil Co. v. MG Ref. & Mktg., Inc.*
257 F. Supp. 2d 768 (S.D.N.Y. 2003) .................................................. 38

*CBT Flint Partners, LLC v. Return Path, Inc.*
737 F.3d 1320 .................................................. 67

*Chanel, Inc. v. Banks*
No. WDQ-09-843, 2011 WL 121700 (D. Md. Jan. 13, 2011) .............. 66

*Chanel, Inc. v. French*
No. 05-61838-CIV, 2006 WL 3826780 (S.D. Fla. Dec. 27, 2006) ........ 66

*Charbonneau v. Mortg. Lenders of Am. LLC*
No. 2:18-cv-02062-HLT, 2021 WL 4772939 (D. Kan. Oct. 13, 2021) .................................................. 67

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*
696 F.3d 206 (2d Cir. 2012) .................................................. 56

*Coach Servs., Inc. v. K Ya Int'l, Inc.*
No. 09 CIV. 4656, 2010 WL 2771897 (S.D.N.Y. June 10, 2010) ....... 66

*Diane Von Furstenberg Studio v. Snyder*
No. 1:06CV1356, 2007 WL 3143690 (E.D. Va. Oct. 23, 2007), *aff'd*, 294 F. App'x 10 (4th Cir. 2008) .................................................. 57

*Douglas v. Cunningham*
294 U.S. 207 (1935) .................................................. 52

*Dream Games of Ariz., Inc. v. PC Onsite*
561 F.3d 983 (9th Cir. 2009) .................................................. 52

*El Greco Leather Prods. Co. v. Shoe World, Inc.*
806 F.2d 392 (2d Cir. 1986) .................................................. 32

*F.W. Woolworth Co. v. Contemp. Arts, Inc.*
344 U.S. 228 (1952) .......... 56

*Farouk Systems, Inc. v. Costco Wholesale Corp.*
No. 4:09-cv-03499 (S.D. Tex. Oct. 12, 2011) .......... 34

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*
314 F.3d 48 (2d Cir. 2002) .......... 29

*Feltner v. Columbia Pictures Television, Inc.*
523 U.S. 340 (1998) .......... 54

*Gen. Elec. Co. v. Joiner*
522 U.S. 136 (1997) .......... 35

*Gordon v. N.Y.C. Bd. of Educ.*
232 F.3d 111 (2d Cir. 2000) .......... 18

*H-D U.S.A., LLC v. SunFrog, LLC*
311 F. Supp. 3d 1000 (E.D. Wisc. 2018) .......... 57

*Hargis v. Pacifica Senior Living Mgmt., LLC*
No. 2:22-CV-06989-MCS-PD, 2024 WL 2967536 (C.D. Cal. May 7, 2024) .......... 64

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*
219 F.3d 104 (2d Cir. 2000) .......... 56

*Inc. v. Gold Ctr. Jewelry*
997 F. Supp. 409 (S.D.N.Y. 1998) .......... 64

*Island Fund Management, Inc. v. RWS, Inc.*
2019 WL 1466707 (S.D. Fla. Feb. 11, 2019) .......... 32

*Jarvis v. Ford Motor Co.*
283 F.3d 33 (2d Cir. 2002) .......... 19, 29

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*
327 F. Supp. 3d 606 (S.D.N.Y. 2018) .......... 52, 60

*Johnson v. King-Richardson Co.*
36 F.2d 675 (1st Cir. 1930) .......... 38

*Kelly Toys Holdings, LLC v. alialialiLL Store*
606 F. Supp. 3d 32 (S.D.N.Y. 2022).................................................... 64

*Lee v. Kucker & Bruh, LLP*
No. 12 CIV. 4662 BSJ JCF, 2013 WL 680929 (S.D.N.Y. Feb. 25, 2013) ....................................................................................... 38, 42

*Logtale, Ltd. v. IKOR, Inc.*
738 F. App'x 422 (9th Cir. 2018) ........................................................ 51

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*
No. 20 CIV. 3773 (LGS), 2023 WL 2563054 (S.D.N.Y. Mar. 17, 2023) ............................................................................... 38, 39, 40

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*
112 F.3d 1296 (5th Cir. 1997)............................................................. 33

*Mfg. Co. v. Trainer*
101 U.S. 51 (1880)............................................................................... 57

*Mirlis v. Greer*
952 F.3d 36 (2d Cir. 2020) .................................................................. 18

*Murray v. Cingular Wireless II, LLC*
242 F.R.D. 415 (N.D. Ill. 2005)........................................................... 62

*Nat. R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land in the City of New London, New London County, State of Conn.*
766 F.2d 685 (2d Cir. 1985) ................................................................ 30

*Palin v. New York Times Co.*
113 F.4th 245 (2d Cir. 2024)......................................................... 40, 41

*Parker v. Time Warner Entm't Co.*
331 F. 3d 13 (2nd Cir. 2003) ........................................................ 61, 62

*Pompano v. Michael Schiavone & Sons, Inc.*
680 F.2d 911 (2d Cir. 1982) ................................................................ 24

*Psihoyos v. John Wiley & Sons, Inc.*
748 F.3d 120 (2d Cir. 2014) .................................................................. 58

*Romag Fasteners, Inc. v. Fossil, Inc.*
No. 3:10-cv-1827 (D. Conn. Apr. 2, 2014)........................................... 34

*Saint-Jean v. Emigrant Mortg. Co.*
129 F.4th 124 (2d Cir. 2025)......................................................... 18, 29

*Sec. & Exch. Comm'n v. Jarkesy*
603 U.S. 109 (2024) .......................................................................... 54

*Sony BMG Music Ent. v. Tenenbaum*
719 F.3d 67 (1st Cir. 2013) .......................................................... 59, 60

*St. Louis, I. M. & S. Ry. Co. v. Williams*
251 U.S. 63 (1919) .......................................................................... *passim*

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*
74 F.3d 488 (4th Cir. 1996)................................................................. 65

*Tallman v. Freedman Anselmo Lindberg, L.L.C.*
No. 11-3201, 2013 WL 2631754 (C.D. Ill. June 12, 2013) ................. 39

*Tereshchenko v. Karimi*
102 F.4th 111 (2d Cir. 2024)................................................................ 35

*Terminate Control Corp. v. Horowitz*
28 F.3d 1335 (2d Cir. 1994) ..............................................................., 22

*Top Tobacco, L.P. v. Star Importers & Wholesalers, Inc.*
135 F.4th 1344 (11th Cir. 2025) ........................................54, 57, 58, 59

*Tri-M Grp., LLC v. Sharp*
Civ. No. 06-556-SLR, 2009 WL 3046382 (D. Del. Sept. 23, 2009) .... 39

*Turley v. ISG Lackawanna, Inc.*
774 F.3d 140 (2d Cir. 2014) ................................................................ 18

*United States v. Cone*
714 F.3d 197 (4th Cir. 2013)................................................................ 34

*United States v. Harvey*
547 F.2d 720 (2d Cir. 1976) .................................................................. 39

*United States v. Krivoi*
80 F.4th 142 (2d Cir. 2023).................................................................. 47

*United States v. Litvak*
889 F.3d 56 (2d Cir. 2018) .................................................................. 35

*United States v. Tillem*
906 F.2d 814 (2d Cir. 1990) .......................................................... 49, 51

*Uzoukwu v. City of New York*
805 F.3d 409 (2d Cir. 2015) .................................................................. 18

*Yurman Design, Inc. v. PAJ, Inc.*
262 F.3d 101 (2d Cir. 2001) .................................................................. 58

Statutes

15 U.S.C. § 1116(d) ............................................................ 1, 15, 26, 27, 28

15 U.S.C. § 1116(d)(1)(B).................................................... 20, 22, 23, 24

15 U.S.C. § 1117(c)................................................................... 57, 59, 63

15 U.S.C. § 1127...................................................................................... 21

28 U.S.C. § 1920.......................................................................... 2, 66, 67, 68

Lanham Act § 1117(a) .............................................................................. 2

Pub. L. No. 110-403, 122 Stat. 4256 (2008)............................................ 58

Other Authorities

Federal Rule of Civil Procedure 61 ........................................................ 30

Federal Rule of Civil Procedure 51 ........................................................ 29

H.R. Rep. No. 98-997, 98th Cong., 2d Sess. (1984) ........................... 24, 25

Joint Statement on Trademark Counterfeiting Legislation, 130
Cong. Rec. H12076-H12083 (Oct. 10, 1984)........................................ 24

## CITATION FORMS

Citations in the form "JA__" refer to pages of the Joint Appendix filed with the United States Court of Appeals for the Second Circuit.

Citations in the form "SPA__" refer to the pages of the Special Appendix filed by Defendants- Appellants WGACA with the United States Court of Appeals for the Second Circuit.

Citations in the form of "WGACA Br. ___" refer to Defendants-Appellants Opening Brief to the United States Court of Appeals for the Second Circuit.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

WGACA's Statement of the Issues misleadingly frames some of the disputes that were before the District Court and are now before this Court. WGACA's appeal is more accurately asking this Court to determine whether the District Court erred by:

1. Not including a statement in the jury instruction that the jury must determine whether the handbags at issue were made in a Chanel factory, which would have essentially incorporated the overrun exclusion under 15 U.S.C. § 1116(d) (which WGACA waived and on which it submitted no evidence) into the definition of "counterfeit", and erroneously shifted the burden to Chanel to prove that the counterfeit handbags at issue were not made in a Chanel factory;

2. Granting Chanel's Motion in Limine No. 4 (the "MIL") to exclude irrelevant evidence of Chanel's purported motivation for bringing suit that was substantially more unfairly prejudicial than probative where the Court's order did not prevent WGACA from repeatedly challenging and making arguments regarding the alleged biases of Chanel's witnesses at trial and in its closing; and

3. Refusing to disturb the jury verdict and award of statutory damages where the District Court found the award was "within the

range prescribed by Congress" and "the jury took great care" "evincing a clear intent to award the maximum amount of damages allowed under the statute"; or

4. Awarding the reasonable costs of the action in the form of ESIH hosting and processing costs and Westlaw and Lexis fees to Chanel as the prevailing party pursuant to Section 1117(a) of the Lanham Act and 28 U.S.C. §1920.

## STATEMENT OF THE CASE

### I. Chanel Brought This Case to Stop WGACA's Infringement of the Famous Chanel Trademarks, False Association, and the False Advertising and Sale of Infringing and Counterfeit CHANEL-Branded Goods

Plaintiff-Appellee Chanel, Inc. ("Chanel") is the United States arm of the famous French fashion house founded by Gabrielle "Coco" Chanel, which is known for its iconic and coveted fashions, handbags, and fragrance and beauty products bearing the famous "CHANEL" and the iconic "CC" logo trademarks. (JA154; 159-62.) This case arises from Chanel's efforts to protect consumers and uphold the integrity of its valuable trademarks and brand. Chanel brought this case in 2018 to stop Defendant-Appellant WGACA ("WGACA"), a reseller, from infringing Chanel's trademarks, falsely suggesting an affiliation with

Chanel, selling infringing and counterfeit CHANEL-branded items, and falsely advertising such infringing and counterfeit goods as genuine.

On February 6, 2024, following an eighteen-day trial (Phase I of the trial), the jury unanimously concluded, *inter alia*, that WGACA had willfully infringed Chanel's trademarks. (JA1168-71.) The jury found, based on the evidence presented, that WGACA sold fourteen counterfeit CHANEL-branded handbags after being forewarned by Chanel, first on July 29, 2015, prior to the commencement of this action, and subsequently while this lawsuit was pending. (JA4935-63; 5087-88; 3992.) During deliberations, the jury asked the District Court about the "willful infringement maximum," and then awarded the maximum statutory damages for willful counterfeiting under the Lanham Act. (JA3991.) A second trial before the Court was held on July 15, 2024, regarding damages and injunctive relief and a judgment was entered on February 26, 2025. (SPA4-11.) WGACA moved for judgment as a matter of law or alternatively a new trial on willful counterfeiting (JA3155-56) and Chanel moved for attorney's fees and costs. (JA1770-71.) The District Court denied WGACA's motion and granted in part and denied in part Chanel's motion, granting Chanel's $560,978.97 application for costs. (SPA17; 24.)

WGACA now asks this Court to overturn both the jury's verdict and the District Court's June 26, 2025 decision denying WGACA's Rule 50(b) and 59 motions.

### A. The Jury and the District Court Concluded that Chanel Presented Compelling Evidence of WGACA's Counterfeiting and Willfulness

The jury heard how every genuine Chanel handbag is assigned a unique Chanel Serial Number and how the Chanel Serial Number is a critical component of each Chanel handbag. Each unique Chanel Serial Number is placed upon an authenticity card, label and sticker and these key components are randomly allotted or assigned to an authorized Chanel factory. The unique Chanel Serial Number may only be permanently linked -- "married" -- to a specific handbag and have its unique characteristics recorded in Chanel's Orli product tracking system (the "Orli System") after the handbag has been manufactured, inspected and approved by Chanel. (JA3497; 3505; 3571; 3606.) The jury heard how Chanel's Orli System allows Chanel to monitor each handbag's journey from the factory to the point-of-sale and identify CHANEL-branded counterfeits. (JA3505; 3510; 3586; 3617; 3622.) A counterfeit can be identified, either by: i) a voided or non-existing Chanel Serial Number; or ii) a valid Chanel Serial Number that has

been pirated and is associated with a CHANEL-branded handbag that does not match the characteristics of the genuine Chanel handbag with that number in Chanel's Orli System. (JA3504; 3510; 3579-80; 3584; 3586-87; 3622-23.) Chanel's witnesses explained how the Chanel Serial Number is a critical component used to determine whether a Chanel handbag is genuine and how some other inconsistent aspects of CHANEL-branded handbags such as hardware can be taken from genuine bags or copied by counterfeiters. (SPA21-22; JA3540; 3542-43; 3588-89; 3607.)

The jury also heard testimony about a 2012 Chanel factory break-in in Corti, Italy where thieves stole 30,000 Chanel authenticity cards, labels and stickers bearing Chanel Serial Numbers (including Serial Number 17688191), and how those Chanel Serial Numbers were immediately voided before being "married" to any handbag. (3504-09; 3573.) ***However, no handbags were stolen***. (SPA21; JA3509.) Chanel presented evidence that voided Chanel Serial Numbers cannot be and were never associated with any genuine Chanel handbag. (JA3504; 3573; 3587; 4190-4259.) Chanel also showed that the voided stolen authenticity cards, labels and stickers subsequently were found in police counterfeiting raids. (JA3509; 3536; 3784.) As the District

Court recounted: "Chanel's witnesses testified that no genuine Chanel handbags were ever authorized to be made with the stolen Chanel Serial Numbers, as they were voided after the theft, before they could be associated with any authorized handbags." (SPA21.)

The jury learned how Chanel found WGACA was offering a counterfeit CHANEL-branded handbag bearing Serial Number 17688191 ("191 Counterfeit") for sale online and sent a cease-and-desist letter to WGACA on June 26, 2015 giving notice that "no legitimate Chanel bag has ever been made with the [17688191] serial number [WGACA] posted" and "that the [17688191] serial number was never authorized for use." (JA4924.) Chanel warned WGACA that: "Remedies for [WGACA's] sale of counterfeit goods . . . can include statutory damages of $2 million." (*Id.*) Chanel requested WGACA "in light of [its] core values [to] cooperate with Chanel in addressing the unlawful activity" and "[r]emove all references to or depictions of the bag at issue"; "[d]eliver the counterfeit product to Chanel for appropriate destruction"; and "[p]rovide [Chanel] with full details concerning the source of the counterfeit bag." (JA4924-25.) Chanel also asked that WGACA "[i]n connection with [WGACA's] sale of any other Chanel products, include in the description all serial numbers and if

you have products that are not yet posted online, provide a list to Chanel of all of the serial numbers for such items." (*Id.*)

The jury also heard how WGACA responded after Chanel warned WGACA about advertising and selling the 191 Counterfeit. (JA4929-33; 6949-51.) The jury heard testimony from Paige Rubin, a former WGACA employee, who first contended in response to Chanel's letter that the Chanel Serial Number on the 191 Counterfeit was a "typo or data entry error" and was instead 17267828. (JA4931; 3701-03; 3711-12.) This response proved false, as the jury heard evidence that WGACA had already sold the handbag bearing Chanel Serial Number 1726828 months ***before*** Chanel's cease-and-desist letter. (JA5088; 3726; 3328 (Video Clip 41).) The jury also viewed Ms. Rubin's prior video deposition where she testified she could not recall taking measures to ensure the 191 Counterfeit was not sold by WGACA and confirmed that the 191 Counterfeit was sold on July 29, 2015, weeks after Chanel's letter. (JA3704; 3325 (Video Clip 34); 3326 (Video Clip 36).) Chanel also introduced WGACA's records (JA5087-88) and the video testimony of WGACA's Vice Chairman, Frank Bober, as its 30(b)(6) witness, which demonstrated, despite Chanel's warning, that WGACA never verified whether there was a "typo or data entry error" (JA3326 (Video Clip 37))

and sold the 191 Counterfeit. (JA3726; 5087-88). The jury heard Ms. Rubin then change her story and deny the very existence of the 191 Counterfeit. She testified that there must have been another error and the actual Chanel Serial Number should have had seven digits instead of eight. (JA3701-04; 3711-12.) The jury then heard Chanel's Lora Moffatt rebut Ms. Rubin's testimony by testifying that none of the possible seven-digit variations of the 17688191 Serial Number matched a valid Chanel Serial Number. (JA3807-09; 7169-78.) The jury also saw WGACA's records which demonstrated that WGACA sold three additional counterfeit CHANEL-branded handbags bearing voided Chanel Serial Numbers ***during*** the pendency of this case and ***after*** it was put on notice of the range of voided Chanel Serial Numbers and that any handbags bearing these were counterfeit. (JA3929.)[1]

The jury also learned from Chanel's witnesses and exhibits that when Chanel asked WGACA to post photographs of Chanel Serial Numbers to avoid future typos or data entry errors, WGACA responded

[1] Even though WGACA put forward no witness or evidence at the Phase I trial to explain why WGACA sold three CHANEL-branded counterfeits after receiving notice, WGACA contended in its Phase II trial brief, without any support, that it was due to COVID. (JA1594-95.)

it would "be happy to include these shots going forward if we are able to include somewhere on our website that we partner with Chanel to ensure authenticity of these items." (JA6950.) The evidence also showed that, when Chanel admonished WGACA's Ms. Rubin to avoid any false association with Chanel and rejected WGACA's "partnership," WGACA's CEO Seth Weisser scoffed: "Very funny. So legal." (JA3706; 6949.) The jury also heard that, after being forewarned, WGACA repeatedly fostered a false association with Chanel, using Chanel trademarks, images of and purported quotes from Coco Chanel, the hashtag #WGACACHANEL, and other Chanel imagery in its advertising and social media posts. (JA3730-31; 3268-69 (Video Nos. 49, 77, 84); 3437-38; 3662-65; 3732-33; 3888, 3663-65; 3888-89; 3727-29; 4964-5000; 5043-44; 6952; 6991-7009; 7013; 7050-51; 7086-7158; 7162-65.)

Further, the jury heard how the Chanel Serial Number 10218184, which was attached to a counterfeit CHANEL-branded brown pouch advertised and sold by WGACA, had been pirated so much that it was widely known, even by WGACA employees, as being used by counterfeiters. (SPA22; JA3614; 3623; 3687-88; 5045-48.) While WGACA argued the brown pouch it sold was genuine because it claimed

a sticker suggested the bag was repaired in 2004 (JA3874), Chanel's Orli System records for the 10218184 bag showed that the genuine Chanel black camera bag bearing that number was different and made in 2005 (after the counterfeit WGACA brown pouch was purportedly repaired). (JA3580; 4188-97.) Further, Chanel's records did not document any such repair. (JA4403-56; 3623-24.) WGACA provided no evidence and called no witnesses to support its claim but, instead, read a WGACA employee's deposition testimony into the record. (SPA22-23; JA3874.)[2]

The importance of the Chanel Serial Number as a critical authenticity determinant was demonstrated further at trial when WGACA tried to put Chanel's witness, Joseph Bravo, on the spot by asking whether a CHANEL-branded handbag was genuine without permitting him to follow standard procedures by first running the Chanel Serial Number through the Orli System, and he experienced

[2] Notwithstanding WGACA's authenticity guarantee, WGACA's kept ***no documentation whatsoever*** to show whether CHANEL-branded items were authenticated, who authenticated them, or what their provenance was (JA3695.) WGACA also conceded it had no records of the first sale for ***any*** of the CHANEL-branded items it offered or sold. (JA3256 (Video No. 8); 3643-44; 3695-96; 3720-21.)

difficulties. (JA4692; 3749-50.) At trial and in its post-trial motions, WGACA contended that because one CHANEL-branded counterfeit appeared to have what it contended were "genuine metal bits" (a zipper pull), all counterfeits with what appear to be genuine hardware must be genuine and, because Mr. Bravo had difficulty when he was not permitted to use Chanel's Orli System, CHANEL-branded counterfeits with voided Chanel Serial Numbers must be genuine. WGACA ignores the trial evidence, which the District Court cited as a basis for denying WGACA's post-trial motions: ". . . Chanel clearly disproved this at trial. Chanel presented witness testimony about how some counterfeit bags, including 'Frankenstein bags,' can contain genuine hardware." (SPA21-22; JA3540, 3543, 3633.) The District Court also chronicled how Chanel's Bravo highlighted other critical discrepancies independent of hardware, including the CC logo, stitching, thread color, chain length, leather color, and, most importantly, the voided Chanel Serial Number. (SPA22; JA3748-49; 3753.) The District Court also noted that, even though Mr. Bravo initially made an error when speaking about a zipper pull, he later corrected himself and the jury was aware of these inconsistences and still found for Chanel. (SPA22; JA3749.)

Chanel introduced the deposition testimony of WGACA's authenticator, Devyn Shaughnessy, who testified that WGACA had no evidence that WGACA's CHANEL-branded bags featuring the stolen labels, stickers, and authenticity cards bearing voided Chanel Serial Numbers were made in an authorized factory (JA3644) and no information regarding WGACA's purported authentication of the counterfeit 17688191 CHANEL-branded handbag (JA3644; JA3256 (Video No. 8).)

In its statement of the case, WGACA mischaracterizes the record in claiming that Chanel's Orli System was flawed. Among other things, WGACA claims that: "A voided number does not mean that Chanel never made a bag with that number – just that Chanel has no record of one and so cannot say for certain either way," "ORLI is riddled with data issues," and "Corti employees could change ORLI data." (WGACA Br. 11.) None of these statements are supported by the record. (JA3606; 3765.) On the contrary, Chanel's Bravo's testified that no genuine Chanel bag can be associated with a voided Chanel Serial Number in the Orli System. (JA3504; 3506.) Moreover, the testimony WGACA cites related, not to the fourteen counterfeits, but, rather to fifty-one infringing CHANEL-branded handbags that are not at issue on appeal.

(JA3738-46; 4208-59.) As the District Court found in its June 26, 2025 decision, Chanel presented evidence that ***no handbags were taken*** during the Corti theft. (SPA21; JA3509; 4359-64; 4181-85.) As noted above, the Chanel Serial Numbers on cards and labels found with thirteen of the counterfeits were voided immediately after the Corti theft. (JA3504; 4359-64.) Likewise, no testimony or evidence of "data issues" or stolen Chanel bags was ever elicited or proffered by WGACA. (SPA20; WGACA Br. 10.) Further, WGACA never elicited or introduced any evidence about "changed data." The Chanel testimony was to the contrary -- Corti employees could only input, *not change*, data in the Orli System. (JA3764-65.) WGACA aggressively cross-examined and tried to undermine the credibility of Mr. Bravo and other Chanel witnesses, challenging them for bias and inconsistencies, but WGACA put forward no witnesses or evidence to contradict their testimony. (SPA20-22; JA3749-50; 3772-75; 3779; 3448; 3454; 3465-66.) Accordingly, the District Court concluded that when the Phase I evidence was viewed in its totality, it was sufficient to support the jury's conclusion that the fourteen CHANEL-branded handbags at issue were counterfeit and that WGACA acted willfully or with willful blindness. (SPA20-24.)

### B. Evidence from the Phase II Bench Trial Is Not Relevant

WGACA called no witnesses at the Phase I trial, not even to explain what proof WGACA had to show that the handbags sold by WGACA were allegedly "made in a Chanel factory" or why WGACA deliberately sold three counterfeit CHANEL-branded handbags, including the 191 Counterfeit, after being forewarned by Chanel. (SPA20.) Nor did WGACA call any of its so-called experts at Phase I in its defense (JA3943), instead relying solely on attorney cross-examination and argument for the jury to consider. (JA3779; 3858-59; 3933-34.) WGACA's strategic decision not to offer *any* affirmative evidence at the Phase I trial binds it on appeal. Evidence from the Phase II trial concerning WGACA's history, expansion, distribution, authentication process and training that the jury never heard in Phase I (JA4102; 4107-09; 4128) should not be considered with regard to WGACA's appeal of Phase I issues, including the jury instruction, MIL, and statutory damages award.

## SUMMARY OF ARGUMENT

The District Court made no errors that prevented WGACA from "mounting a full defense" to Chanel's trademark infringement and

counterfeiting claims. WGACA tactically chose to put on no defense. WGACA called no witnesses and, instead relied upon its strategy of aggressively cross-examining Chanel's witnesses, including challenging them for bias. Moreover, the jury was well-informed of both the key legal issues and the relevant context. The jury's verdict finding in favor of Chanel on all counts, finding WGACA's actions to be willful, and awarding $4 million in statutory damages was based on Chanel's presentation of compelling and forceful evidence, including damaging and contradictory testimony from WGACA's present and former employees and its CEO.

I. After considering submissions and argument from the parties, the District Court gave a jury charge which mirrors the Lanham Act. (JA3988.) WGACA's further attempt to shift the burden for the "overrun exclusion" affirmative defense, codified in Section 1116(d), to Chanel was improper and unsupported by the law. Moreover, WGACA forfeited its current position that Section 1116(d) requires a new trial by rejecting Chanel's proposed overrun exclusion jury instruction, which contained the substance of the instruction that WGACA now claims should have been included, and by stating before and during the charging conference that WGACA was not relying on the

"overrun exclusion." (JA3954-55.)[3] Even if, assuming *arguendo*, the jury instruction was erroneous, there was no prejudicial error because, as the District Court noted in denying WGACA's motion for a new trial: "WGACA presented no evidence to support its proposition that the bags bearing voided Corti serial numbers were actually made in a Chanel factory. WGACA called zero witnesses at trial and did not elicit testimony proving this point on cross-examination." (SPA20.)

II. The District Court properly granted Chanel's MIL to preclude evidence relating to Chanel's motivation for bringing this lawsuit. The District Court's order in no way precluded WGACA from aggressively challenging Chanel's witnesses for bias, which WGACA did during cross-examination and in its opening statement and closing argument. The evidence WGACA contends it was prevented from introducing is evidence of Chanel's purported motivation, not evidence of witness bias, though WGACA improperly conflates the two. Moreover, the specific Chanel witness testimony that WGACA

[3] Indeed, WGACA acknowledges in its moving brief that Chanel's proposed instruction contained the substance of the instruction it now claims was missing. (WGACA Br. 35.)

challenges was neither material to the jury's verdict nor contradicted by the excluded evidence.

III. WGACA's contention that the jury's statutory damages award must be awarded on a "per-bag" basis or based on actual damages has no support in the law, and due process challenges to damages that are awarded within the Lanham Act's statutory range have been consistently rejected by courts across the nation. The Seventh Amendment provides a right to a jury trial on all issues pertinent to a statutory damages award, including the amount, and here the jury carefully considered its award, as evidenced by the note from the jury to the District Court asking to understand the maximum amount of statutory damages that could be awarded under the Lanham Act. Given that the jury's statutory damages award was within the range prescribed by Congress and fully supported by the Phase I trial record, the jury's award should not be disturbed.

IV. With regard to the "costs" awarded by the District Court in response to Chanel's attorney fee application, Chanel submits that the record concerning "costs" is not developed and should be remanded to the District Court so that Chanel can file a Bill of Costs with the Clerk of the Court.

## ARGUMENT

### I. THE DISTRICT COURT'S COUNTERFEIT INSTRUCTION WAS NOT ERRONEOUS, WGACA FORFEITED ITS OBJECTION TO THE INSTRUCTION, AND ANY ALLEGED ERROR WAS HARMLESS

Challenges to a district court's jury instructions are reviewed *de novo*. *Mirlis v. Greer*, 952 F.3d 36, 44 (2d Cir. 2020) (citing *Uzoukwu v. City of New York*, 805 F.3d 409, 414 (2d Cir. 2015)). As this Court has noted, a verdict will be overturned on a challenge to jury instructions only if: (1) the instructions were erroneous, and (2) the error was prejudicial. *See Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 147 (2d Cir. 2025); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 152-53 (2d Cir. 2014). "Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law," *Uzoukwu*, 805 F.3d at 414, and error is prejudicial where the appellant can show that the error, "in light of the charge as a whole," *Turley*, 774 F.3d at 153, improperly "influence[d] the jury's verdict," *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). In addition, because WGACA forfeited its objection by contending at trial that "[t]his is not an overrun case" (JA3946; 3954-55), review should be limited to

"fundamental" error. *See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002).

WGACA argues that "[t]he instructions on the definition of a 'counterfeit mark' misstated the law and left the jury with the misimpression that even bags that Chanel authorized to bear its marks could be counterfeit." (WGACA Br. 23.) As a result, WGACA contends that "the jury lacked the tools it needed to evaluate WGACA's defense that Chanel authorized the Corti factory to make thirteen of the fourteen allegedly counterfeit bags" and "without a correct definition of a counterfeit mark, the jury could not answer the downstream question of whether WGACA acted willfully in selling any given 'counterfeit.'" (*Id.*) WGACA ignores this Court's recent summary order in *AL Infinity LLC v. Spalter*, No. 24-1412, 2025 WL 1937263, at *2 (2d Cir. July 15, 2025) (summary order), the Lanham Act's definition of "counterfeit" and its related legislative history, and the fact that WGACA rejected Chanel's proposed "overrun" charge and consistently contended "[t]his is not an overrun case." (JA3946; 3954-55.)

WGACA now on appeal tacitly argues that Section 1116(d)(1) is broader than the exclusions for parallel imports, gray market goods, and overruns that WGACA disavowed before the District Court, and

rather that the exclusions are "without limitation" and applicable "[n]o matter how the goods entered the stream of commerce[.]" (WGACA Br. 25.) But as explained herein, Section 1116(d)(1)'s exclusion is intentionally narrower than WGACA contends and, in any event, WGACA, relying upon Section 1116(d)(1)(B), now argues in substance for an instruction based on the overrun exclusion. WGACA claims "[t]he court erred in not instructing the jury that, per the Lanham Act if the allegedly counterfeit bags were manufactured by a factory authorized by Chanel to use its marks, those bags could not bear counterfeit marks." (WGACA Br. 19-20.) Said differently, WGACA's objection argues that the question as to whether an item is counterfeit should include an examination as to whether the accused handbags were manufactured in a Chanel-authorized factory, which essentially seeks to incorporate the overrun exclusion into the "counterfeit definition" and shift the burden on the exclusion, which is an affirmative defense, to Chanel. Thus, WGACA's construction that the statute's exception is limitless, while incorrect, is a red herring because WGACA is advocating for a version of the overrun exclusion, which WGACA forfeited.

Moreover, even assuming *arguendo*, that WGACA's argument has any merit, which it does not, any purported error below was harmless because, as the District Court noted, and in the face of ample evidence that the items were counterfeit (and could not have been manufactured by Chanel): "WGACA presented no evidence to support its proposition that the bags bearing voided Corti serial numbers were actually made in a Chanel factory. WGACA called zero witnesses at trial and did not elicit testimony proving this point on cross-examination. The only references to WGACA's unfounded theory were through statements from its attorneys, which are decidedly not evidence." (SPA20.)

### A. The Court's Counterfeiting Instruction Mirrored the Lanham Act

The Lanham Act defines "counterfeit" in two places. *See AL Infinity LLC*, 2025 WL 1937263, at *2. The "Construction and Definitions" section, defines a counterfeit as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (SPA31). Congress incorporated this definition in the applicable part of the "Injunctive Relief" section: a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services

sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered. . . . 15 U.S.C. § 1116(d)(1)(B). The District Court's instruction mirrored this definition:

> A counterfeit trademark means a mark that is **not genuine** or authentic but is substantially indistinguishable from a registered trademark. **A counterfeit handbag is** so close **a copy** that it is difficult to tell it from the original. **Deviations between genuine** Chanel products **and the contested goods**, including discrepancies between Chanel records and the actual characteristics of the contested goods, may be evidence that ***they were not manufactured by Chanel***.

(JA3988.) (Emphasis added.) Importantly, WGACA did not include the last sentence in its opening brief. (WGACA Br. 24.) WGACA failed to set forth the full substance of the Court's jury instruction on Chanel's counterfeiting claim, ignoring key language in the instruction. In so doing, WGACA disregards the "'basic law that a jury charge should be examined in its entirety, not scrutinized strand-by-strand.'" *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1345 (2d Cir. 1994). When viewed in its entirety as this Court's precedent requires, the District Court's instruction in no way misled the jury to believe that handbags made by an authorized Chanel factory to its specifications may be considered counterfeit.

### B. WGACA's Proposed Alternative Instruction Erroneously Shifted the Burden of the Overrun Affirmative Defense to Chanel

In contrast, WGACA's Proposed Jury Instruction 6 omitted any definition of "counterfeit trademark" altogether, improperly conflated the concept of "counterfeit trademark" with WGACA's definition of "counterfeit handbag," and sought to improperly shift the burden of proof of proving the overrun exception to Chanel:

> Chanel claims that 12 handbags sold by WGACA are counterfeit. You must determine if any (or all) of these 12 handbags are counterfeit. A counterfeit handbag is one that is a copy and not an original and one that was not manufactured by a factory authorized by Chanel to make Chanel handbags. Chanel has the burden of proving by a preponderance of evidence that each of the 12 handbags that Chanel contends are counterfeit are copies and not originals and were not in fact made in a factory authorized by Chanel to make Chanel handbags.

(JA1068.) This definition of "counterfeit" is contrary to the Lanham Act, established precedent, and the legislative history.

The placement of the word "but" in Section 1116(d)(1)(B) makes it clear that the exclusion is not part of the definition:

> ***but such term does not include*** any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or

> services so manufactured or produced, by the holder of the right to use such mark or designation.

15 U.S.C.A. § 1116(d)(1)(B)(emphasis added); *see* H.R. Rep. No. 98-997, 98th Cong., 2d Sess., at 13 (1984) ("This language distinguishes the exception from the basic definition of 'counterfeit mark.'").

To the extent there is any ambiguity in the Lanham Act about whether the definition of "counterfeit" incorporates the exclusion or which party bears the burden of proof regarding the exclusion, this Court has held that it should "examine the statute's legislative history to ensure that the meaning" ascribed "to these words fits their purpose, as that was what Congress intended." *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 913 (2d Cir. 1982). The legislative history of Sections 1127 and 1116(d) support the District Court's construction and makes plain that ***the exclusion was meant to be an affirmative defense, with the burden of proof resting on the defendant***. *See* H.R. Rep. No. 98-997, 98th Cong., 2d Sess., at 12-14 ("The defendant has the burden of proving that the goods in question fall within the exclusion set forth in proposed subsection (d)"); Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076–H12083 (Oct. 10, 1984) *as reprinted in* 5 McCarthy on Trademarks Appendix A7

(5th Ed.) ("[T]he burden will be on the defendant to prove that the goods or services in question would fall within the overrun exclusion. . . ."). Contrary to WGACA's contention that "[t]he language is without limitation," (WGACA Br. 25), the House Report makes clear that the exclusions are to be narrowly construed:

> The Committee intends the exclusion to cover all situations involving "overruns" and "parallel imports" or "grey market" goods but recognizes that, in an everchanging economic climate, the specific exclusion may not meet every possible instance of conduct it is ***not*** intended to cover. In such cases, the Committee relies on the elements of the offenses and the definition of "counterfeit mark" to ensure that the bill is interpreted in an appropriately narrow manner.

H.R. Rep. No. 98-997, 98th Cong., 2d Sess., at 7 (emphasis added). As the House Report explains, "[t]he term 'overruns' in general refers to goods made by a trademark owner's designated manufacturer, but not permitted by, or violative of, the agreement between the owner and the manufacturer." *Id.* The accused CHANEL-branded handbags at issue were counterfeit and could never be genuine because the critical component of authenticity – the Chanel authenticity cards, labels, and stickers bearing Chanel Serial Numbers – had been stolen and voided and never could be married to a genuine Chanel handbag. (*See* JA3569.)

In *AL Infinity LLC*, the Second Circuit recently addressed this very question, overturning a ruling that placed the burden of proof in 1116(d) upon the plaintiff. 2025 WL 1937263 at *4 ("To the extent that [defendant's] theory is that the [items in question] were manufactured . . . pursuant to authorization . . . [***defendant***] must proffer evidence to support that contention.") (emphasis added). This Court held that the district court had erred "[b]ecause the district court['s] . . . reasoning reflects an assumption that it was [plaintiff's] burden to demonstrate that the agreements [allegedly granting manufacturing authority] were terminated. . . ." This Court therefore "vacate[d] the district court's denial of [plaintiff's] motion for summary judgment and remand[ed] to give [defendant] the opportunity to marshal the necessary evidence to defeat [plaintiff's] summary judgment motion." *Id.*

In sum, the exclusionary language in Section 1116(d) creates an affirmative defense for the defendant but does not impose an additional burden upon the plaintiff seeking to prove counterfeiting. As Chanel argued at the charging conference, requiring Chanel to prove that the affirmative defense did *not* apply, rather than requiring WGAGA to prove that it *did*, would be contrary to Congress's intent and the

legislative history and would have been legal error. (JA3954-55.) The District Court's instruction was not erroneous.

### C. WGACA Forfeited Any Objection Based Upon the Section 1116(d) Exclusion

Though WGACA intentionally does not style its appeal as based on the overrun exclusion, WGACA is nonetheless arguing in substance, if not in name, that the Court should have adopted a version of that exclusion. Indeed, WGACA acknowledges that Chanel's proposed instruction on the overrun exclusion "recognized the importance of this issue" which WGACA argues on appeal. (WGACA Br. 38.) Chanel's proposed instruction was based upon the correct legal standard,[4] explaining that the "exception that prevents [items manufactured by an authorized manufacturer] from being deemed 'counterfeit' under the law," and how WGACA could prove the exclusion applies. (JA1142.)

WGACA did not adopt Chanel's proposed jury instruction, and WGACA explicitly declared twice that it was not relying upon the

[4] Chanel's proposed jury instruction properly placed the burden upon WGACA to prove the accused counterfeits were "manufactured or produced by a manufacturer or producer who was authorized by Chanel" "in the manner and to specifications authorized by . . . Chanel. . . ." Plaintiff Chanel, Inc.'s Amended Proposed Jury Instructions, Proposed Jury Instruction No. 18, The 'Overrun' Or 'Authorized Use' Exception" (JA1142; *see id.* at "Source/Authority".)

overrun exclusion set forth in Section 1116(d). (JA1165-1167.) Specifically, the day before the charge conference, WGACA stated *in camera* that WGACA was not relying upon Section 1116(d): "But your Honor, this is not an overrun case. . . . This is not an overrun case."[5] (JA3946.) The next day at the charge conference, Chanel, based upon WGACA's waiver, requested removal of the words "was not manufactured by a factory authorized by Chanel to make Chanel handbags" and argued the overrun exclusion should not be incorporated into the "counterfeit mark" definition. (JA3954.) ("Mr. DeCarlo stated on the record yesterday that they are not going to argue the factory overrun issue. So if it's not an issue in this case, it shouldn't be in the jury instructions."). In response, WGACA reiterated that WGACA was not relying on the "overrun exclusion." (JA3954-3955.)

As a result, WGACA waived its claim of error which is based in substance entirely on the overrun exclusion (even though WGACA is not calling it that on appeal) because WGACA repeatedly confirmed it was ***not relying*** on the overrun exclusion and provided no other legal grounds for its objection. *See, e.g.*, *Benson v. Fam. Dollar Operations,*

[5] WGACA has never claimed that the CHANEL-branded counterfeits at issue are parallel imports or grey market goods.

*Inc.*, 755 F. App'x 52, 58 (2d Cir. 2018) (summary order) ("Rule 51 requires the district court to give the parties 'an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered,' but it also requires any party who objects to do so 'on the record, stating distinctly the matter objected to and the grounds for the objection.' Fed. R. Civ. P. 51(b)(2), (c)(1)."); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 61 (2d Cir. 2002) ("Under Rule 51 of the Federal Rules of Civil Procedure, a party in a civil action must make specific objections to jury instructions before the jury retires to deliberate."). It is well-established that where a party forfeits its objection, as WGACA did here, this Court's review is limited to "fundamental" error, which is not present here. *Fashion Boutique*, 314 F.3d at 61 (noting that "[f]undamental error is a more exacting standard than the 'plain error' standard in the criminal context and must be 'so serious and flagrant that it goes to the very integrity of the trial.") (quotation omitted); *see Jarvis*, 283 F.3d at 62.

### D. Any Purported Error Was Harmless Because WGACA Presented No Evidence to Support Its Speculation as to the Accused CHANEL-Branded Handbags

A jury verdict based upon challenged jury instructions will only be overturned where the instructions were erroneous ***and*** the error was

prejudicial. *Saint-Jean*, 129 F.4th at 147. The "determination of whether error was prejudicial is guided by the harmless error doctrine as incorporated in Federal Rule of Civil Procedure 61. . . . That doctrine cautions that a judgment should stand unless it appears inconsistent with substantial justice because it followed from an error that affected the substantial rights of the parties." *Nat. R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land in the City of New London, New London County, State of Conn.*, 766 F.2d 685, 688 (2d Cir. 1985) (internal citations omitted).

There was no prejudice to WGACA because, as the District Court below acknowledged: "WGACA presented no evidence to support its proposition that the bags bearing voided Corti serial numbers were actually made in a Chanel factory." (SPA20.) On appeal, WGACA cites to no evidence to support its speculation, but again relies upon the same attorney argument which the District Court explained was not evidence (SPA20; WGACA Br. 37-38) and which both the jury and District Court rejected. (SPA20-23; WGACA Br. 32-38.) WGACA relies upon the testimony of Chanel's Joseph Bravo and Pier Luigi Roncoglia for its speculation that the counterfeit CHANEL-branded bags contained hardware that only could have come from a Chanel factory but, as the

District Court found, this testimony does not actually support WGACA's theory. These witnesses testified that (a) some counterfeits called "Frankenstein" bags feature genuine hardware and (b) "it's possible for counterfeiters to find this type of hardware, at lower cost . . . in Asia." (JA3602-03; 3540; 3542-43.) The District Court recognized that "Mr. Bravo also highlighted other non-genuine aspects of the bag independent from its hardware." (SPA22.) As a result, there was ***no*** evidence to support WGACA's conjecture (and sufficient evidence to support the jury's verdict in Chanel's favor).

### E. WGACA's Cited Authority Is Distinguishable and Not Controlling

WGACA erroneously relies upon *AL Infinity, LLC v. Crown Cell, Inc.,* 2023 WL 5097979, at *6 (S.D.N.Y. Aug. 9, 2023), for the proposition that the Lanham Act requires that the jury instruction include mention as to whether a good was "produced by an authorized manufacturer." (WGACA Br. 27.) WGACA ignores this Court's summary order reversing the district court decision on the very question at issue here. *AL Infinity, LLC*, 2025 WL 1937263 at *4 ("Because the district court erred in concluding that [plaintiff] had failed to establish a *prima facie* case, and its reasoning reflects an

assumption that it was [plaintiff's] burden to demonstrate that the agreements were terminated, *see AL Infinity, LLC,* 2023 WL 5097979, at *9, we vacate the district court's denial of [plaintiff's] motion for summary judgment and remand to give [defendant] the opportunity to marshal the necessary evidence to defeat [plaintiff's] summary judgment motion."). This Court's ruling makes it plain that ***WGACA***, not Chanel, bears the burden of proving the affirmative defense provided by the exclusion in 1116(d).

None of the other cases cited by WGACA support its argument that the District Court's instruction was erroneous. While some involve application of the overrun exclusion, none adopt WGACA's position with regard to the incorporation of the exclusion into the definitional jury instruction or WGACA's attempt to shift the burden of proof for such exclusion. *See Brainstorm Interactive, Inc. v. School Specialty, Inc.*, 2014 WL 6893881, at *16 (W.D. Wis. Dec. 5, 2014) (application of overrun exclusion at summary judgment where defendant presented evidence of licensed manufacture); *Island Fund Management, Inc. v. RWS, Inc.*, 2019 WL 1466707, at *6 (S.D. Fla. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1468540 (S.D. Fla. Mar. 12, 2019) (application of overrun exclusion on default judgment); *see also El Greco*

*Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395-96 (2d Cir. 1986) (undisputed that shoes were manufactured pursuant to order from trademark holder, but shoes still infringing).

Moreover, WGACA's cited authority reflects situations where a defendant presents affirmative evidence of authorized manufacture. *See Knature Co. v. Duc Heung Grp., Inc.,* 2021 WL 3913194, at *3 (C.D. Cal. July 2, 2021) (finding at summary judgment that gray market goods were infringing but not counterfeit where defendant produced a "wealth of other documentary evidence showing an unbroken chain of custody from" an authorized manufacturer); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1308 (5th Cir. 1997) (reversing summary judgment on wrongful seizure counterclaim where there was undisputed evidence that trademark was placed by trademark owner). Here, as explained above, WGACA put forward no affirmative evidence, relying only on attorney argument to support its speculative theory that the items at issue could have been manufactured by an authorized manufacturer. To the contrary, the evidence established that the stolen authenticity cards, labels, and stickers bearing voided Chanel Serial Numbers could not be used by

authorized Chanel factories in the manufacture of a Chanel handbag, (JA3506-07; 3574; 3765.)

WGACA's reliance on *United States v. Cone*, 714 F.3d 197, 206 (4th Cir. 2013), where the Fourth Circuit held that the criminal counterfeiting statute did not apply to altered goods bearing genuine marks, is likewise inapposite. In *Cone*, the marks at issue were genuine and the question before the court was only whether alteration of the product could transform them into counterfeits. *Id.* at 207. Here, Chanel set forth evidence that the marks were not genuine, including because no genuine Chanel handbag could be manufactured by an authorized factory with the voided Chanel Serial Numbers. (JA3765.)

WGACA's contention that "[c]ourts regularly instruct on [WGACA's proposed] definition" and citation to jury instructions given in other district courts as authority is misplaced. It is well-established that a district court is "not bound by another district court's jury instructions." *Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 221 (S.D.N.Y. 2022). Moreover, WGACA's citations to portions of jury instructions from *Farouk Systems, Inc. v. Costco Wholesale Corp.*, No. 4:09-cv-03499 (S.D. Tex. Oct. 12, 2011), *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10-cv-1827 (D. Conn. Apr. 2, 2014),

and *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 4:18-cv-03451 (N.D. Cal. Nov. 4, 2021), are misleading because WGACA cherry-picks only select portions of the respective cited instructions (eliminating necessary context) or because such instructions involved goods not at issue here (*e.g.*, "diverted" goods).

## II. THE COURT PROPERLY EXCLUDED EVIDENCE OF CHANEL'S MOTIVATION FOR BRINGING SUIT

A district court's evidentiary decisions, "including its decision to exclude evidence that is subject to a motion in limine," are reviewed for abuse of discretion. *Tereshchenko v. Karimi*, 102 F.4th 111, 124 (2d Cir. 2024). "'[T]he standard is demanding: to find such an abuse [this Court] must be persuaded that the trial judge ruled in an arbitrary and irrational fashion.'" *Id.* Thus, this Court "'will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous.'" *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–43 (1997) (noting that "'[c]ases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous,'" and holding that an appellate court erred in

reviewing a district court's exclusion of evidence where "it failed to give the trial court the deference that is the hallmark of abuse-of-discretion review.").

### A. WGACA Improperly Conflates Evidence Regarding Chanel's Motivation for Bringing Suit, Which the Court Properly Excluded, With Evidence of Witness Bias

As an initial matter, as Chanel's MIL (JA731-738) and the Court's ruling on the same (SPA2) make plain, Chanel did not move to exclude evidence of bias of Chanel's witnesses. Rather, Chanel's MIL was narrow and sought only to exclude irrelevant and prejudicial argument and evidence regarding Chanel's purported motivation or reasons for bringing this case, which WGACA repeatedly introduced into the litigation by arguing that Chanel's enforcement of its trademark rights was a "pretext" to destroy the secondary market. (JA731-738.)

The District Court's ruling on Chanel's MIL was likewise limited, holding only that "the evidence ***regarding Chanel's motives*** will provide no help in deciding the trial disputes over claims that WGACA infringed Chanel's trademarks." (SPA2) (emphasis added.) As the District Court further correctly pointed out on the first day of trial: "No party needs justification for bringing a lawsuit. It's one of our civil

rights. It doesn't have to be justified." (JA3427). The District Court did not exclude from trial evidence concerning the bias of Chanel's witnesses. Indeed, WGACA's counsel cross-examined Chanel's witnesses on their alleged bias (JA3448; 3454; 3465; 3539; 3559-60; 3604; 3771-75), and argued bias to the jury in its closing. (JA3963.) WGACA was in no way prejudiced or hamstrung in presenting "bias" evidence to the jury.

WGACA improperly conflates evidence of Chanel's *motivation* in bringing the lawsuit with evidence of witness *bias* in favor of Chanel. But the two are not the same, factually or legally. This conflation is demonstrated throughout WGACA's opening brief, in which it argues the Court should have admitted evidence that Chanel allegedly "had an ulterior, anticompetitive purpose" for bringing its lawsuit and "a hostile approach to the secondhand market." (WGACA Br. 41-42, 46.) WGACA contends further that the "jury deserved to know . . . Chanel used legal action to achieve another goal. . . ." (*Id.* 45). This is not evidence that that any particular witness harbored bias. Rather, it relates only to *motivation* for bringing suit which case law makes clear is irrelevant (or more prejudicial than probative). Thus, while none of the evidence WGACA cites in its opening brief actually supports its contentions, the

District Court properly excluded this evidence about Chanel's motivations for bringing its suit as irrelevant and unfairly prejudicial. *See*, *e.g.*, *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 768, 773 (S.D.N.Y. 2003) (granting motion *in limine* to exclude evidence and argument on motivations for plaintiffs' filing of lawsuit, as it would be distracting, had no direct bearing on issues to be decided, and that the probative value was outweighed by danger of unfair prejudice, confusion, and misleading the jury).

Federal appellate courts have followed this "generally prevailing" rule for nearly a century. *See, e.g.*, *Johnson v. King-Richardson Co.*, 36 F.2d 675, 677 (1st Cir. 1930) ("The rule generally prevailing is that, where a suitor is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial. . . ."). Indeed, considerable district court precedent in this Circuit holds that evidence and argument regarding a plaintiff's motives for bringing a lawsuit are "irrelevant to the merits of its claims." *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 CIV. 3773 (LGS), 2023 WL 2563054, at *5 (S.D.N.Y. Mar. 17, 2023) (granting motion *in limine* to exclude evidence of motivation for suit); *see also, e.g.*, *Cary Oil Co.*, 257 F. Supp. 2d at 773; *Lee v. Kucker & Bruh, LLP*, No. 12 CIV. 4662 BSJ JCF, 2013

WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) ("The motivation of the plaintiff in bringing suit is irrelevant to an alleged [statutory] violation by the defendants. . . ."). WGACA's brief avoids such authority from within this Circuit altogether.

The District Court's exclusion of motivation evidence also is consistent with other district court decisions. *See Tallman v. Freedman Anselmo Lindberg, L.L.C.*, No. 11-3201, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013); *Tri-M Grp., LLC v. Sharp*, Civ. No. 06-556-SLR, 2009 WL 3046382, at *1 (D. Del. Sept. 23, 2009).

The authority cited by WGACA is not on point because it does not deal with the exclusion of evidence of a plaintiff's motivation, which was the type of evidence excluded in this case. WGACA first cites a series of criminal case decisions which concerned evidence that a witness may have reason to falsely testify. (WGACA Br. 43-44.) The criminal cases are entirely inapposite here, where WGACA sought to introduce irrelevant evidence of Chanel's alleged motivations for bringing this suit, rather than discrete evidence of a specific witness' inclination to lie in the context of criminal charges. *See*, *e.g.*, *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir. 1976) (addressing evidence of possible bias of witness who made identification on which the appellant's criminal

conviction rested). *Manbro Energy Corp.*, upon which WGACA also relies, distinguished similar criminal authority on the same grounds, noting that evidence which tends to undermine the credibility of a specific witness giving evidence supporting a conviction in a criminal case is distinguishable from evidence of a plaintiff's general motives for bringing a civil lawsuit. *See* 2023 WL 2563054, at *5.

WGACA also incorrectly relies upon *Palin v. New York Times Co.*, 113 F.4th 245, 275 (2d Cir. 2024), which did not concern exclusion of evidence of a plaintiff's motivation for bringing suit. In *Palin*, the evidence at issue concerned whether a party to a defamation case had knowledge of facts that might have affected his intentionality when he made the allegedly defamatory statements at issue. *Id.* at 275. The evidence in *Palin* therefore went to the heart of the issue before the jury, unlike the evidence at issue here, where the alleged motivations of Chanel in seeking to protect its intellectual property do not weigh at all on the ultimate issues to be decided by the jury (*e.g.*, did WGACA sell infringing and counterfeit CHANEL-branded items). WGACA also cites *Lobato v. Gomez*, but *Lobato* likewise did not concern the motivations of a plaintiff for bringing suit. *See* No. 1:15-CV-00686-EPG, 2017 WL 931824, at *4 (E.D. Cal. Mar. 8, 2017). The evidence in *Lobato*

concerned other lawsuits that were relevant because they may have involved allegations that "were not consistent with" allegations in *Lobato*, which "would support Defendant's claim that Plaintiff was not telling the truth about her visit to Defendants' establishment." *Id*.

Thus, the District Court's decision to exclude WGACA's proffered evidence of Chanel's motivation for bringing suit was not an abuse of discretion and was clearly consistent with the treatment of similar evidence by courts in this Circuit and beyond.

### B. The Supposedly "Misleading" Testimony Relied on By WGACA Was Not Material to the Jury's Judgment, Nor Was It Misleading

WGACA claims that evidence relating to Chanel's purported motivation for bringing its lawsuit was an abuse of discretion because such evidence was necessary to address allegedly misleading testimony by three of Chanel's witnesses: Joyce Green, Jennifer Bleys, and Joseph Bravo. However, none of the testimony of the Chanel witnesses referenced by WGACA is misleading, nor was the testimony material to the issues before the jury at trial (*i.e.*, whether or not WGACA willfully and falsely associated itself with Chanel and advertised and sold infringing and counterfeit CHANEL-branded items as genuine).

With regard to Joyce Green, WGACA claims the excluded evidence should have been admitted to rebut Green's testimony "about her motivations" and about whether "Chanel takes issue with the secondary market." (WGACA Br. 45). To begin with, Ms. Green did not "testify about her *motivations* in 'enforcement or policing of Chanel's brand image'" as WGACA claims. (*Id.*) (emphasis added). Instead, Ms. Green was asked about her *role* in brand enforcement. (*See* JA3427.) Nevertheless, WGACA goes on to argue that, because of Ms. Green's immaterial testimony about her role, the jury should have been given evidence of Chanel's purported "goal" in bringing legal action. (WGACA Br. 45.) As explained, Chanel's "motives" or "goals" in bringing this action are not relevant and such evidence as to why a party is enforcing its rights is properly excluded. *See*, *e.g.*, *Lee*, 2013 WL 680929 at *2. Indeed, as the District Court correctly noted on the first day of trial "… I held the motives were immaterial in a trademark case, where the issues were infringement." (JA3427).

WGACA also claims that Ms. Green denied that Chanel "takes issue with the secondhand sale of Chanel items," (WGACA Br. 45), but whether or not Chanel "takes issue" with the secondhand market is not material to the jury's determination regarding whether WGACA sold

counterfeit goods and infringed Chanel's trademark rights (and would only serve to confuse and prejudice the jury). Nor is it relevant to any specific bias of Ms. Green.

Even assuming *arguendo* there were some grounds for admitting evidence of Chanel's purported motivation, nothing in the single exhibit cited by WGACA directly contradicts, or even undermines, Ms. Green's sworn testimony. The single out-of-context quote from a slide in a detailed PowerPoint deck that WGACA relies upon does not support its assertions about Chanel's "goal." (*See* JA898-914.) While the slide in question, entitled "What is at stake for Chanel?," lists "risk of cannibalization" as a possible business risk to Chanel, (JA899), the deck at large reflects only that Chanel was considering business options concerning the secondary market at the time, including "enter[ing] the second hand market" (JA900), or "partnership." (JA907.) While WGACA takes issue with the fact that Ms. Green testified at trial that Chanel does not have an objection to the sale of secondhand Chanel items (JA3454), the deck at issue actually demonstrates Chanel's efforts to maintain a close connection with and high level of service for its clients regardless of distribution channel. (JA899 ("Show that people who buy a Chanel product whatever the channel are Chanel clients and

that Chanel products bought whatever the channel remain Chanel products.").)[6]

With regard to Jennifer Bleys, WGACA contends that evidence of Chanel's purported motivation should have been admitted because Bleys:

- "claim[ed] that the 'primary purpose' of Chanel's cease-and-desist letter to WGACA was to remove an allegedly counterfeit handbag from WGACA's website;"

- "[s]tated that Chanel does not sue secondhand retailers who demonstrate 'cooperation;'" and

- "testified that the company does not help resellers authenticate Chanel bags because doing so would be 'completely unfeasible.'"

(WGACA Br. 46.) WGACA's contention that evidence of Chanel's motivations was necessary to rebut this "misleading" testimony is

[6] Ms. Green did not "smear" WGACA in stating that WGACA had been found to sell counterfeits (*see* WGACA Br. 50); rather, her subsequent testimony made clear that she was referring to Chanel's 2015 cease and desist letter to WGACA regarding the 191 Counterfeit misdescribed on WGACA's website (JA4924-25) and that Chanel's statement in the letter "was an allegation that Chanel made, not any kind of finding by any court or anything." (JA3452-3453.) WGACA's conclusion that the jury would have viewed Ms. Green's testimony through a different lens if it only knew more of Ms. Green's purported "bias" against WGACA (WGACA Br. 50) is pure speculation.

without merit. Her testimony was not misleading and WGACA's cited evidence does not rebut her testimony or demonstrate bias.

Ms. Bleys' statement about the cease-and-desist letter was entirely consistent with record evidence demonstrating that Chanel sent its 2015 cease-and-desist letter to put WGACA on notice that its "promotion and sale of counterfeit products makes [WGACA] both directly and contributorily liable for counterfeiting and trademark infringement. . . . " (JA4924-25.) With regard to "cooperation," the actual exchange was as follows:

> Q. And with those other secondhand retailers, have there been lawsuits?
> A. Not with cooperation. If they cooperate, we wouldn't have brought a lawsuit.

(JA3794.) This statement is likewise consistent with the evidence that Chanel did not sue WGACA when it believed WGACA to be cooperating (after WGACA provided false information in response to Chanel's cease-and-desist letter). (JA4930.) While WGACA complains that "Bleys did not disclose that Chanel had sent at least 15 cease-and-desist letters to sellers of secondhand Chanel products" (WGACA Br. 46), the fact that Chanel had sent fifteen cease-and-desist letters to resellers during a three-year period as part of its brand protection efforts because they

had infringed Chanel's trademarks or violated its rights is irrelevant to the issues at trial. Nor does that fact make Ms. Bleys' testimony misleading.

What *is* misleading is WGACA's contention that it could have impeached Ms. Bleys' testimony *but for* the Court's ruling. The single exhibit WGACA relies on, a 2017 PowerPoint deck containing an overview of the secondhand market, does not contradict Ms. Bleys' testimony. For example, concerning WGACA's final point about feasibility, WGACA contends a single slide from the vast deck of more than seventy slides contradicts Ms. Bleys' testimony, but that slide only states that Chanel had, "3-4 years" before the time of the deck's creation, "given trainings" to certain third parties. (JA966.) That same slide noted that at the time of the deck's creation there were "no trainings given," and contains no information about the feasibility of continuing or starting to assist retailers in authentication. (JA966.) The single other slide cited by WGACA likewise does render Ms. Bleys' testimony "misleading." (JA985.)

Thus, apart from being completely irrelevant to the issues at trial (*i.e.*, it makes no difference whether Chanel could assist retailers with authentication or what business options Chanel considered with regard

to the secondhand market), WGACA's cited evidence could not impeach Ms. Bleys' testimony and sheds no additional light on her credibility. The Court correctly excluded this evidence and line of questioning from Ms. Bleys' cross-examination, as it was both irrelevant and too remote and speculative to have any impact on Ms. Bley's credibility. *See*, *e.g.*, *United States v. Krivoi*, 80 F.4th 142, 157 (2d Cir. 2023) (noting that a district court's limitation of cross-examination is reviewed only for abuse of discretion, and holding that limitation was proper where there was insufficient evidentiary foundation connecting subject of cross-examination to demonstration of personal bias).

Finally, WGACA contends that "[e]vidence that Chanel wanted to eliminate the secondhand market would have explained Bravo's inclination to declare each bag counterfeit until proven wrong." (WGACA Br. 47.) Again, WGACA's brief admits that what WGACA sought to introduce was evidence of Chanel's *motivations*, and the excluded evidence has no connection to Mr. Bravo's testimony or his credibility as a witness.

As chronicled above, *supra* at 18, when WGACA asked Mr. Bravo to authenticate an item on the spot and without the use of his usual tools (*e.g.*, Chanel's Orli System), Mr. Bravo made an inadvertent

mistake and then corrected his testimony after consulting his records. (JA3749-50; 3596-99.) WGACA repeatedly and harshly criticized Mr. Bravo for his inconsistent testimony, all within the presence of the jury. (JA3772-74; 3967-68.) As the District Court noted: "The jury was aware of these inconsistencies and still found for Chanel." (SPA22.) In sum, the excluded irrelevant evidence does not undermine any of the testimony cited by WGACA and was not relevant to the bias or credibility of any of these witnesses; WGACA's contention that evidence of Chanel's purported motivation should have been admitted given the testimony of these Chanel witnesses is without merit.

### C. The Exclusion of Motivation Evidence Did Not Prejudice WGACA

Even if the District Court erroneously excluded evidence (it did not), reversal is not warranted if, as here, there was no prejudice to WGACA. *Carroll v. Trump*, 124 F.4th 140, 157-58 (2d Cir. 2024). WGACA bears the burden of showing on appeal that the error was not harmless. *Id.*

WGACA has not met this burden and cannot show prejudice here because despite the Court's exclusion of motivation evidence, WGACA was able to aggressively cross-examine Chanel's witnesses as to their

purported biases and argue at length in its closing that they were biased. WGACA has not made, and cannot make, any showing that the jury's verdict was tainted by the exclusion of the evidence as issue, and its appeal on this ground should be denied. *See id.*; *see also, e.g.*, *United States v. Tillem,* 906 F.2d 814, 827-28 (2d Cir. 1990) (noting that reversal based on erroneous exclusion of evidence is not required if "'the jury was already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely. . . .'").

WGACA's attorneys attacked the credibility of Chanel witnesses throughout the trial and, in closing, argued that Chanel's witnesses had an ethical duty to slant their testimony in favor of the company:

> Most of the witnesses that testified for Chanel in this case were advocates for Chanel. I mean, the reason I started my questioning with, [']Are you familiar with the ethics code and your duty to uphold client secrets and be an advocate for your client['] is because before they walked into this courtroom, they were already biased, and they already knew what they were going to say.

(JA3963). WGACA contended that because Chanel's witnesses were employees of Chanel and some of the witnesses were lawyers, their testimony was necessarily biased:

> And even when we work for corporations, or we work for clients, we have ethics codes, and those ethics codes are clear as day. In

> an adversary system, lawyers have to protect their clients. So where are we? Did the witness have an interest in the outcome of the case? You betcha, a hundred percent. They're employees. I didn't ask them how much money they made. I don't -- quite frankly, I don't want to embarrass anybody. But they have an interest in this case.

(JA3963). WGACA also repeatedly challenged the credibility and bias of Chanel's witnesses, accusing them of contradicting themselves and not answering WGACA's questions in a straightforward, truthful manner. (JA3963-68.) That the jury did not agree with WGACA's view of such witnesses' purported bias is not a valid basis for overturning the jury's verdict or attributing error to the District Court.

Notwithstanding the Court's MIL ruling, WGACA's counsel also repeatedly referenced Chanel's purported animus against the secondary market at closing, asserting that "Chanel has decided to use their power, use their money, and use their leverage to make a statement through WGACA about the secondhand market." (JA3961.) WGACA's counsel repeatedly attacked Chanel for not "embracing the secondary market." (JA3962.) Indeed, WGACA summarized its unsupported secondary market argument this way: "And I submit to you that's really what this case is about. This case is about trying to sully their

reputation, hurt their business, because for whatever reason, Chanel does not like the secondary market." (JA3962.)

In light of the foregoing, WGACA cannot show prejudice because the jury certainly had sufficient information to make a "discriminating appraisal" of the credibility of Chanel's witnesses, and there is no demonstrable prejudice from exclusion of the purported motivation evidence (which, in any event, was properly excluded). *See Tillem,* 906 F.2d at 827–28; *see also Logtale, Ltd. v. IKOR, Inc.*, 738 F. App'x 422, 424 (9th Cir. 2018) (affirming exclusion of bias evidence because "even if Defendants could show error, they cannot show prejudice" because "the jury certainly knew that [the witness] was biased – he was [plaintiff's] founder."). Notably, WGACA violated the MIL order by repeatedly referencing a supposed animus by Chanel towards the secondhand the market.

## III. THE JURY'S STATUTORY DAMAGES AWARD DOES NOT VIOLATE DUE PROCESS BECAUSE THE STATUTORY DAMAGES AWARDED ARE WITHIN THE RANGE PRESCRIBED BY CONGRESS

The jury's statutory damages award, which WGACA concedes is within the permitted damages range expressly prescribed by the Lanham Act, is protected under the Seventh Amendment, and does not

violate due process under either *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) ("*Williams*") or *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ("*Gore*"), the latter of which does not even apply to statutory damages awards. As WGACA acknowledges, where a statute contains a maximum award limit, Congress has effectively restricted a jury from awarding an "untethered" damages amount. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 635 (S.D.N.Y. 2018) ("Congress has placed an upper bound on the damages that a jury can award, which mitigates the risk of a truly untethered award.") (internal quotations and brackets omitted); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (jury has "'wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima'"); *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) (damages award based on "employment of the statutory yardstick, within set limits…takes the matter out of the ordinary rule with respect to abuse of discretion.").

Moreover, the jury's deliberate decision to award maximum statutory damages for the two counterfeit trademarks at issue ($2 million each) was supported by ample evidence. Notably, WGACA is

not challenging the jury's finding that WGACA acted "willfully, with reckless disregard, or with willful blindness" in its sale of counterfeit Chanel handbags, which clearly informed its statutory damages award. As the District Court noted in denying WGACA's post-trial motions, the extensive trial record supports the jury's finding that WGACA was a willful infringer,[7] the statutory damages award was not outside the bounds of the Lanham Act, and was not "'so excessive that the Court should intrude on [the jury's] prerogative to set damages.'" (SPA26) (quoting *Agence Fr. Presse v. Morel*, 2014 WL 3963124, at *15 (S.D.N.Y. Aug. 13, 2014).)

WGACA seeks to supplant the jury's verdict and does not (and cannot) cite any case which holds that a statutory damages award within the permitted range of the Lanham Act constitutes a due process violation.

---

[7] WGACA put forward no evidence to refute the fact that WGACA sold the counterfeit CHANEL-branded handbags, kept no records of its purported authentications, and failed to cooperate with Chanel to discover and stop the sale of counterfeit CHANEL-branded bags in 2015. *See supra* Statement of the Case I.A. Rather, the testimony established that WGACA lied to Chanel about the counterfeit bag in 2015 (and sold it after receiving Chanel's cease and desist letter identifying it as counterfeit), and then sold additional counterfeit Chanel handbags during the course of trial after having been informed of the range of voided serial numbers being used in counterfeit bags. *Id.*

Accordingly, this Court should join the other courts that have uniformly rejected due process challenges to statutory damages awards.

### A. The Seventh Amendment Protects the Jury's Determination Regarding Maximum Statutory Damages

"[T]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with utmost care.'" *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 121 (2024) (quoting *Dimick v. Scheidt*, 293 U.S. 474, 486 (1935)). In view of the Seventh Amendment, appellate courts are careful in scrutinizing jury verdicts and awards out of a historical respect for trial by jury. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (The "Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages. . . , including the amount itself."). As a result, it is well settled that appellate courts may not make credibility determinations or reweigh facts underlying factual determinations, such as the amount of a jury verdict. *See Top Tobacco, L.P. v. Star Importers & Wholesalers, Inc.*, 135 F.4th 1344, 1350 (11th Cir. 2025); *see also, e.g.*, *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 358–59 (1962) ("neither we nor the Court of Appeals

can redetermine facts found by the jury any more than the District Court can predetermine them.").

WGACA's appeal asks this Court to impermissibly re-examine the jury's determination of the facts and the amount of the statutory damages award, substituting its judgment for that of the jury and thereby depriving Chanel of its right to a jury trial.

### B. Neither *Williams* Nor *Gore* Support Reversal of the Jury's Statutory Damages Award

#### 1. *The jury's award does not violate the "Williams Standard."*

In *Williams*, the Supreme Court upheld a state law penalty challenged under the Due Process Clause of the Fourteenth Amendment as disproportionate to the damages sustained, observing that while the statute was "essentially penal" it was "not contrary to due process of law" because the statute awarded the penalty to the passenger and not the state and "it is imposed as a punishment for the violation of a public law." 251 U.S. at 64-66. The Supreme Court explained that while the Fourteenth Amendment "places a limitation upon the power of the states to prescribe penalties for violations of their laws," it does so "with the express or tacit qualification that the states still possess a wide latitude of discretion in the matter, and that their

enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66-67.

The facts and holding of *Williams* do not support WGACA's appeal because Lanham Act statutory damages for willful infringement serve "[t]he principal purpose of federal trademark law [which] is to 'secure the public's interest in protection against deceit as to the sources of its purchases[.]'" *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quoting *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 57 (2d Cir. 1995)); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir. 2000).

As the Supreme Court has explained in the copyright context, statutory damages "must be within the prescribed limitations" but "[w]ithin these limitations, the court's discretion and sense of justice are controlling. . . ." *F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232 (1952).

While WGACA argues that *Williams* requires that a Lanham Act statutory damages award be tailored to or limited by a plaintiff's actual damages, courts have repeatedly rejected that very argument. *See, e.g.*,

*Top Tobacco,* 135 F.4th at 1350; *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1047 (E.D. Wisc. 2018); *Diane Von Furstenberg Studio v. Snyder*, No. 1:06CV1356, 2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007), *aff'd*, 294 F. App'x 10 (4th Cir. 2008).[8] Instead, it is well-established that the jury has "wide latitude to award a within-range verdict regardless of the size of actual damages." *Top Tobacco*, 135 F.4th at 1350. The plain text of the statute makes clear that Congress enacted the election of statutory damages within the proscribed ranges "*instead of* actual damages and profits." 15 U.S.C. § 1117(c) (emphasis added). In holding that a challenged jury statutory damages award was consistent with *Williams*, the Eleventh Circuit in *Top Tobacco* noted that "[b]ecause the Supreme Court has long recognized that the enforcement of trademarks vindicates 'the public interest,' *Mfg. Co. v. Trainer*, 101 U.S. 51, 62 (1880), Congress could establish the statutory damages regime in section 1117(c). . . ." *Id.* Moreover, recognizing the serious public problem of trademark counterfeiting, Congress amended Section 1117(c) in 2008 and doubled the maximum statutory damages

[8] Without citing any legal authority, WGACA contends that the jury's award should be retroactively scrutinized on a "per bag" analysis which it contends demonstrates that the award is unfairly punitive.

award from $1 million up to $2 million to remedy and deter such conduct. Pub. L. No. 110-403, 122 Stat. 4256, 4259 (2008).

As this Court has held, "statutory damages are not meant to be merely compensatory or restitutionary [but] also to discourage wrongful conduct." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001) (citation and quotation marks omitted). This Court explained the rationale (in the context of copyright statutory damages):

> Although revenue lost is one factor to consider, we have not held that there must be a direct correlation between statutory damages and actual damages. To suggest otherwise is to ignore the various other factors a court may consider and the purposes of statutory damages in the willful infringement context.

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014); *see also Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012).

In *Top Tobacco, L.P.*, the Eleventh Circuit rejected WGACA's very argument that a counterfeiting verdict should be thrown out because it bore no relationship to the actual damages that the plaintiffs suffered, holding: "[Defendant's] argument that the verdict needed to be related to actual damages is . . . wrong as a legal matter. ***The lodestar for the legality of an award for statutory damages is the range***

***enshrined by Congress—not the amount of actual damages***." 135 F.4th at 1350 (emphasis added). As the Eleventh held: "Nothing in section 1117(c) nor precedent suggests that statutory damages must be related to actual damages; instead, all signs point toward the opposite conclusion." *Id.* The court concluded that in view of the public interest, the opportunities for the offense, and the need for securing uniform adherence to established law, the jury award could not "'be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.'" *Id.* at 135 (quoting *Williams*, 251 U.S. at 67).

Here, given the public interest and the overwhelming evidence supporting the jury's finding that WGACA was willful in its sale of counterfeit handbags, the jury had ample basis to award maximum statutory damages expressly permitted by the Lanham Act. The jury's award neither violates due process nor runs afoul of *Williams*.

2. *The jury's award does not violate the "Gore Standard."*

WGACA argues alternatively that, because Lanham Act statutory damages have a punitive element, *Gore* is controlling and dictates that the jury's award be overturned. (WGACA Br. 56.) This argument fails, as numerous cases have made clear that *Gore*'s punitive damages guideposts do not apply to statutory damages awards. *See Sony BMG*

*Music Ent. v. Tenenbaum*, 719 F.3d 67, 70 (1st Cir. 2013) ("By its own terms, *Williams* applies to awards of statutory damages, which the jury awarded in this case, while *Gore* applies to awards of punitive damages, which the jury did not award."); *Capitol Records*, 692 F.3d at 907 ("The Supreme Court never has held that the punitive damages guideposts are applicable in the context of statutory damages."). "Although not yet considered by the Second Circuit, other circuits agree that the *Gore* factors are inapplicable to statutory damages awards." *John Wiley & Sons, Inc.*, 327 F. Supp. at 635-36. Indeed, "[t]he concerns regarding fair notice to the parties of the range of possible punitive damage awards, which underpin *Gore*, are simply not present in a statutory damages case where the statute itself provides notice of the scope of the potential award." *Sony BMG Music Ent.,* 719 F.3d at 70.

As the Eighth Circuit explained in *Capitol Records*., the due process "concern about fair notice does not apply to statutory damages, because those damages are identified and constrained by the authorizing statute" and a reviewing court cannot "consider the difference between an award of statutory damages and the 'civil

penalties authorized,' because statutory damages *are* the civil penalties authorized." 692 F.3d at 907-08 (emphasis in original).[9]

WGACA's reliance on *dicta* in *Parker v. Time Warner Entm't Co.*, 331 F. 3d 13 (2nd Cir. 2003), is misplaced. Unlike *Parker*, this case does not involve statutory damages in the context of the class action mechanism which this Court hypothesized "may expand the potential statutory damages so far beyond the actual damages . . . to resemble punitive damages," thus implicating possible due process concerns. *Id.* at 22. In fact, district courts in the Second Circuit have specifically distinguished *Parker* on this point, explaining that "the Second Circuit considered, in dicta, the hypothetical question of whether the recovery of statutory damages by each individual plaintiff in a class action could result in a 'devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class.' . . . The instant case is not a class action, and thus, does not raise

[9] Even if notice concerns were applicable here (they are not), WGACA received notice in Chanel's June 26, 2015 cease-and-desist letter, which warned WGACA of the maximum statutory damages. (JA4924-25.) WGACA also disregarded Chanel's other warnings about the 191 Counterfeit and voided Chanel Serial Number and refused to provide a list of Chanel Serial Numbers unless Chanel entered into a partnership with WGACA. (JA4924-25; 4949-51.)

the same concerns." *Arista Records LLC v. Usenet.com, Inc.*, No. 07 CIV 8822 HB THK, 2010 WL 3629688, at *9 (S.D.N.Y. Feb. 2, 2010), *report and recommendation adopted*, No. 07 CIV 8822 HB, 2010 WL 3629587 (S.D.N.Y. Sept. 16, 2010). Similarly, *Murray v. Cingular Wireless II, LLC*, 242 F.R.D. 415 (N.D. Ill. 2005), is another inapposite class action case. Notably, in *Murray*, the court rejected the due process argument because such an argument was "speculative at this point in the proceedings" where the court was considering class certification. *Id*. at 421. Neither *Parker* nor *Murray* apply here.

### C. The Jury's Thoughtfully Deliberate Award of Maximum Statutory Damages Was Within the Permitted Statutory Damages Range Set by Congress

As the District Court noted when it rejected WGACA's Rule 50(b) and 59 motions, "the jury took great care . . . [d]uring deliberations, [the jury] specifically asked about the 'willful infringement maximum,' ***evincing a clear intent to award the maximum amount of damages allowed under the statute.*** (SPA25) (emphasis added).[10]

[10] The question posed was: "What is the maximum amount [of statutory damages] for the handbags in the third of the claims?" The third claim involved Chanel's trademark counterfeiting claims. (JA3991.)

The District Court responded to the jury's note as follows, consistent with the metrics of the Lanham Act:

> The maximum statutory amount of 2 million is per mark per type of goods. There are two marks at issue: the CC logo and the Chanel name. There's one class of goods, one type of goods: handbags. So that means that the total possible statutory damages are 4 million.

(JA3991.) The jury continued to deliberate and found, *inter alia*, that WGACA engaged in willful counterfeiting, and awarded the maximum $2 million for each of the registered CC logo and CHANEL trademark used on handbags. As the District Court observed, "the jury took great care" to ensure "[t]he award here [was] within the range prescribed by Congress." (SPA25); *see* 15 U.S.C. §1117(c).

Not only was the jury's award deliberate and within the range prescribed by Congress, it also was warranted given the trial evidence. The District Court's jury instructions made clear that "[t]he purpose of statutory damages is to compensate the trademark owner, penalize the counterfeiter and deter future trademark counterfeiting…" and provided the factors which the jury could consider. (JA3988.) Awards of statutory damages are particularly appropriate where, as here, WGACA did not keep proper records, frustrated cooperation, and the profits gained by defendants and revenues lost by plaintiffs are difficult

to determine. *See Guess?, Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998) (citing S. Rep. No. 177, 104th Cong. 1995); *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 54 (S.D.N.Y. 2022). WGACA also took a cavalier attitude, making light of Chanel's warning to not sell the 191 Counterfeit in 2015 and the attendant risk of maximum statutory damages.

Notably, WGACA cites no case in which a jury's statutory damages award within the statutory limits has been found to violate due process, and Chanel has found none. Put bluntly, there is no authority to support WGACA's request of this Court. *See Hargis v. Pacifica Senior Living Mgmt., LLC*, No. 2:22-CV-06989-MCS-PD, 2024 WL 2967536, at *5 (C.D. Cal. May 7, 2024) (rejecting argument that jury's maximum statutory damages award violated due process, noting there was "no authority, and the Court finds none, where a court found a jury's maximum statutory damages award to a plaintiff for a defendant's willful copyright infringement violated due process."); *Arista Records LLC*, 2010 WL 3629688 at *9 ("Defendants have cited no case where a court has found a statutory damages award within the range prescribed by Congress to be unconstitutional.").

None of the cases cited by WGACA support its position. Contrary to WGACA's description, the court in *Nike, Inc. v. Top Brand Co.* actually awarded maximum statutory damages. No. 00 CIV. 8179 KMW/RLE, 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006) ("Therefore, the damages recommended here are the maximum of $1,000,000 per mark per type of good, as plaintiffs have requested."). *Nike* actually supports affirmance.

Moreover, the default cases cited by WGACA (WGACA Br. 54-56), wherein statutory damages were awarded on a default basis without a full trial record, are inapposite. Awards calculated on a motion for default judgment are different in kind than determinations by a jury, which are entitled to substantial deference. *See Agence Fr. Presse*, 2014 WL 3963124, at *15 (citing *Feltner*, 523 U.S. at 347-55) ("It is true that courts setting statutory damages after bench trials or defaults have often awarded less than the jury did in this case, even where the infringing conduct could be characterized as more culpable. [] But the question is not what this [c]ourt would award were it deciding the question itself; the question is whether the jury's award is so excessive that the [c]ourt should intrude on [the jury's] prerogative to set damages."); *Superior Form Builders, Inc. v. Dan Chase Taxidermy*

*Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (review of jury's award is "even more deferential than abuse of discretion"). As a result, *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 CIV. 5781 (CMAJP), 2009 WL 4432678, at *1, *3 (S.D.N.Y. Dec. 4, 2009), *Coach Servs., Inc. v. K Ya Int'l, Inc.*, No. 09 CIV. 4656, 2010 WL 2771897, at *1 (S.D.N.Y. June 10, 2010), *Chanel, Inc. v. Banks*, No. WDQ-09-843, 2011 WL 121700, at *1 (D. Md. Jan. 13, 2011), and *Chanel, Inc. v. French*, No. 05-61838-CIV, 2006 WL 3826780, at *1 (S.D. Fla. Dec. 27, 2006), all of which concern default judgments, are inapposite.

## IV. THE DISTRICT COURT DID NOT ERR IN AWARDING COSTS TO CHANEL, BUT THIS COURT SHOULD REMAND THE ISSUE TO THE DISTRICT COURT FOR CONSIDERATION ON A FUTURE BILL OF COSTS TO BE FILED BY CHANEL

Chanel does not dispute the fact that its Motion for Attorneys' Fees sought certain costs of litigation as part of the award of attorneys' fees, including the ESI and electronic research costs awarded by the District Court. The District Court did not award attorney's fees. This does not mean the District Court's award of costs is totally erroneous. To the contrary, a large portion of the costs awarded by the District Court are recoverable as "costs of the action" under 28 USC § 1920 ("Section 1920"), which permits the recovery of "[f]ees for

exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

While there was previously uncertainty as to the recoverability of ESI-related costs, Congress amended Section 1920 in 2008 to make it clear that ESI-related discovery costs are recoverable. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1326 (Fed. Cir. 2013) (noting that "Congress changed the language as of October 13, 2008, to encompass electronically stored information as well as information on paper."); *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 72 (S.D.N.Y. 2015) ("the effect of the 2008 amendment[] . . . was to allow for the taxation of costs of making copies of digital or electronically stored information.")

Here, the District Court awarded Chanel ESI processing costs in the amount of $58,514.75 and ESI hosting costs in the amount of $197,910.44. Certain of these costs are recoverable under Section 1920(4). *See, e.g., Charbonneau v. Mortg. Lenders of Am. LLC*, No. 2:18-cv-02062-HLT, 2021 WL 4772939, at *8 (D. Kan. Oct. 13, 2021) (awarding ESI hosting costs of $131,128.15 pursuant to 28 U.S.C. § 1920).

But, this Court need not and should not decide this issue now. As WGACA has noted, Chanel can seek its statutory costs in a post-appeal Bill of Costs. Chanel agrees, and because Chanel's ESI-related costs were sought as attorneys' fees, the issue of their recoverability under Section 1920 was never raised or argued before the District Court. Consequently, the record on the issue is not fully developed, and it would be premature for this Court to decide this issue. The Court should, therefore, remand the issue of Chanel's "costs of the action" to the District Court, so that Chanel may have the opportunity to file a Bill of Costs with the Clerk of the Court with supporting evidence setting forth the costs properly sought under Section 1920.

## CONCLUSION

For the foregoing reasons, the Court should affirm the decision of the District Court on the counterfeiting claims, the exclusion of irrelevant motivation evidence, and the award of statutory damages and vacate and remand the "costs" award.

Respectfully submitted,

| | |
|---|---|
| Dated: January 21, 2026 | SHEPPARD MULLIN RICHTER & HAMPTON LLP<br><br>*/s/Theodore C. Max*<br>Theodore C. Max |

| | |
|---|---|
| | tmax@sheppardmullin.com<br>Tyler E. Baker<br>tbaker@sheppardmullin.com<br>Hyo Jin Paik<br>hpaik@sheppardmullin.com<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Telephone: (212) 653-8700<br>Facsimile: (212) 653-8701<br><br>Jill M. Pietrini<br>jpietrini@sheppardmullin.com<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067<br>(310) 228-3700<br><br>Matthew G. Halgren<br>mhalgren@sheppardmullin.com<br>501 West Broadway, 18th Floor<br>San Diego, CA 92101<br>(619) 338-6500<br><br>*Attorneys for Plaintiff and Appellee Chanel, Inc.* |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that the attached brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6). I also certify that, according to the word processing program with which the brief was prepared, the brief contains 13,933 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), and that it therefore complies with the word limit of Second Circuit Rule 32.1(a)(4)(A).

Dated: January 21, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *s/Theodore C. Max*

THEODORE C. MAX

*Attorneys for Plaintiff and Appellee Chanel, Inc.*